# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **BRANCH BANKING & TRUST COMPANY**, a North Carolina banking corporation, successor in interest to Colonial Bank by asset acquisition from the FDIC as receiver for Colonial Bank,<br><br>**Plaintiff/Counterclaim Defendant,**<br><br>v.<br><br>**BB&P, LLC, JAMES F. BEALL, JR., KEVIN H. BLACKWELL and JAMES G. PRUETT,**<br><br>**Defendants/Counterclaim Plaintiffs.** | **CASE NO. 14-CV-00394-CLS** |

## BB&T'S MOTION TO DISMISS DEFENDANTS' AMENDED COUNTERCLAIM[1]

**COMES NOW** Plaintiff Branch Banking & Trust Company, successor in interest to Colonial Bank by asset acquisition from the FDIC as receiver for Colonial Bank ("BB&T"), by and through its undersigned counsel, and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure hereby moves (this "Motion") this Honorable Court to dismiss Defendants' Amended Counterclaim [Doc. No. 18] on the ground that said Amended Counterclaim and each and every count therein fails to state a claim upon which relief may be granted.  In support of

---

[1] Defendants erroneously titled their Amended Counterclaim their "Amended Complaint." BB&T will refer to Defendants' "Amended Complaint" as Defendants' "Amended Counterclaim."

this Motion, BB&T submits the Memorandum of Law set forth below together with the arguments set forth in its original Motion To Dismiss ("Original Motion") [Doc. No. 17].

## INTRODUCTION

Defendants have expressly incorporated into their Amended Counterclaim all of the factual allegations and arguments set forth in their Response to Plaintiff's Complaint and Counter-claim ("Original Counterclaim") [Doc. No. 9]. Amended Counterclaim, pp. 1-3, ¶¶8, 12. The factual allegations in Defendants' Amended Counterclaim are difficult to follow. BB&T believes that they boil down to the following: BB&T made a closed-end development and construction loan to BB&P which was evidenced by the Note. BB&P borrowed loan proceeds to develop subdivision lots. As lots were then sold, sales proceeds were remitted to the bank in order to obtain the release of such lots from the mortgage. The payment of such sales proceeds reduced the balance owed by BB&P. However, despite the fact that the loan balance was reduced, the bank refused to make additional advances upon request even though BB&P performed its obligations and making additional advances would not have caused the outstanding balance owed at any given time to exceed the principal amount set forth on the face of the Note.

## STANDARD OF REVIEW

In order to withstand scrutiny under Rule 12(b)(6) of the Federal Rules of Civil Procedure, counterclaim plaintiffs must plead "enough facts to state a claim to relief that is plausible on its fact," so as to "nudge[] their claims across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Although a "claim has facial plausibility where the pleaded factual context allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1940 (2009), the mere possibility that a plaintiff might prove some facts in support of its claims is insufficient to survive a motion to dismiss.  *Twombly,* 550 U.S. at 570. Accordingly, the plaintiff must "include factual allegations for each essential element of his or her claim."  *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1254 (11th Cir. 2012).  Thus, minimum pleading standards "require[] more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

As explained by the Eleventh Circuit, *Twombly/Iqbal* principles require that a complaint's/counterclaim's allegations be "enough to raise a right to relief above the speculative level." *Speaker v. U.S. Dep't of Health and Human Services Centers for Disease Control and Prevention*, 623 F.3d 1371, 1380 (11th Cir. 2010) (citations omitted). "[I]f allegations are indeed more conclusory than factual, then the court does not have to assume their truth." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *see also Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011) ("Legal conclusions without adequate factual support are entitled to no assumption of truth."). A complaint must plead facts stating a plausible claim for relief. *Twombly*, 550 U.S. at 545 (plaintiff must plead "allegations plausibly suggesting (not merely consistent with)" an "entitle[ment] to relief.").

In evaluating the sufficiency of a pleading in light of *Twombly* and *Iqbal,* the Court must engage in a two-step process. *See Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010). First, the Court should separate the legal conclusions in the complaint from the factual allegations. *Id*. With respect to the legal conclusions, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 129 S. Ct. at 1949. Second, the Court should determine whether the well-pleaded facts "plausibly give rise to an entitlement to relief." *Id*. at 1950. Importantly, the Court

held in *Iqbal*, as it had in *Twombly*, that courts may infer from the factual allegations in the complaint "obvious alternative explanation[s]," which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer.  *Id*. at 1951-52 (quoting *Twombly*, 550 U.S. at 567, 127 S.Ct. at 1972).  Finally, the Court in *Iqbal* explicitly held that the *Twombly* plausibility standard applies to all civil actions because it is an interpretation of Rule 8.  *Id*. at 1953.

## ARGUMENT

**I.    DEFENDANTS' AMENDED COUNTERCLAIM OF NEGLIGENCE SHOULD BE DISMISSED.**

1.    In its Original Motion, BB&T asserted that Defendants' counterclaim of negligence was due to be dismissed as a matter of law for failing to state a claim upon which relief can be granted.  The additional allegations set forth in Defendants' Amended Counterclaim do not add any new claims, and they do not nudge Defendants' claim of negligence "across the line," so to speak, as they, together with the factual allegations and arguments set forth in Defendants' Original Counterclaim, wholly fail to state a claim upon which relief can be granted.

2.    As set forth in BB&T's Original Motion, Alabama case law is clear that a claim for breach of contract, which is exactly what Defendants' counterclaim of negligence is intended to be, may not be transformed into a tort claim. *Temploy, Inc. v. Companion Property and Cas. Ins. Co.*, 2008 WL 4495782, *3 (S.D. Ala.

Oct. 6, 2008), citing *Barber v. Business Products Center, Inc.*, 677 So. 2d 223, 228 (Ala. 1996) (providing that "a mere failure to perform a contractual obligation is not a tort"); *Sims v. Etowah County Bd. of Ed.*, 337 So. 2d 1310, 1313 (Ala. 1976) (same); *see also American Dist. Tel. Co. of Ala. v. Roberts & Son,* 122 So. 837, 840 (Ala. 1929) (holding that an action in tort cannot be maintained where the alleged negligence consists of failure to perform a contractual obligation). Moreover, Alabama law clearly provides that a lender is under no independent duty of care where, as here, the bank's involvement does not go beyond its traditional role as a mere lender of money.  *Morgan v. South Central Bell Tel. Co.,* 466 So. 2d 107, 144 (Ala. 1985); *see also Flying J Fish Farm v. People's Bank of Greensboro*, 12 So. 3d 1185, 1193 (Ala. 2008) (holding that lender did not owe borrower a duty of care that would give rise to a negligence claim); *Armstrong Business Services v. AmSouth Bank*, 817 So. 2d 665, 679 (Ala. 2001) (holding that lender did not owe borrower duty of care that would give rise to a negligence or wantonness claim); *Spriggs v. Compass Bank*, 742 So. 2d 178 (Ala. Civ. App. 1997) (lender did not owe a duty of care to a borrower to notify the borrower of an insurance cancellation, despite practice of providing similar notices to other borrowers); *Cahaba Seafood, Inc. v. Central Bank*, 567 So. 2d 1304 (Ala. 1990) (outside the provision of a contract, lender owed no duty to lend money to borrower).

3. Defendants are attempting to circumvent the applicability and effect of these cases by arguing that BB&T is liable for negligence based upon the breach of its duty to "administer [the] loan reasonably and with due care," which conclusion is, according to Defendants, supported by the case of *In re Lemington Home for the Aged*, 659 F.3d 282 (3d Cir. 2011).[2] However, as set forth above, Alabama case law simply does not support this conclusion, and the case of *In re Lemington*, in which the Third Circuit Court of Appeals addressed claims for breach of fiduciary duty and deepening insolvency asserted against the directors and officers of a nursing home, is clearly inapposite to the matter at hand and therefore inapplicable.

4. Rather than strengthening their assertion of negligence, the Amended Counterclaim instead affirms BB&T's position that Defendants' claim of negligence is due to be dismissed as a matter of law. This is especially clear when read in light of the legal argument made by Defendants purportedly in support of such a cause of action. It becomes apparent that they are trying to create what they hope would be a broader and less defined duty by way of a tort claim because they recognize that the terms of the contract which they agreed to are not sufficient to support their claim of breach of contract.

---

[2] Defendants cited *In re Lemington* in their Response To Defendant's Motion To Dismiss Defendants' Counterclaim ("Response") [Doc. No. 19].

5.     Accordingly, Defendants' counterclaim of negligence is due to be dismissed with prejudice as a matter of law pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II.   DEFENDANTS' AMENDED COUNTERCLAIM OF BREACH OF CONTRACT IS DUE TO BE DISMISSED.

6.     Defendants' amended counterclaim of breach of contract also fails to state a claim upon which relief can be granted.

7.     In their Amended Counterclaim, Defendants correctly aver that the Note states: "THIS IS A CLOSED-END DEVELOPMENT AND CONSTRUCTION LOAN.  ADVANCES TO BE MADE PER CUSTOMER REQUEST, INDEPENDENT INSPECTIONS AND OFFICER APPROVAL." Amended Counterclaim, p. 2, ¶1.  Therefore, Defendants expressly acknowledge that the Loan is a closed-end loan.

8.     Defendants made the following factual allegations in their Original Counterclaim:

- BB&P's Loan was set up as a "line-of-credit."

- BB&P took draws against the Loan and returned "lot release fees" to the Bank in regular intervals.

- The Bank renewed the Loan during which "new money" was made available to BB&P.

- Upon information and belief, there were monies available to BB&P under the Note when it requested advances thereunder to develop and

sell lots within Deerfoot Estates, but the Bank refused to make such additional advances.

Original Counterclaim, p. 4, ¶¶2-4, 10-13.

9. These factual allegations, together with those found in Defendants' Amended Counterclaim, are confusing. On the one hand, Defendants agree that the Loan is a closed-end loan, while on the other it appears they are treating the Loan as an open-end, reusable line of credit. However, it cannot be both, and as a matter of undisputed fact contained within the pleadings themselves, *it is only a closed-end loan*.

10. The distinction between these two types of loans is significant. The case of *Roney v. Springleaf Fin. Svcs. Corp.*, Adversary No. 12-1006-DHW, 2012 WL 2888790 (Bankr. M.D. Ala. May 25, 2012) is useful in identifying the difference.[3] The *Roney* court noted that the term "open end credit plan" is defined by the Consumer Credit Protection Act, 15 U.S.C. § 1602(i), to mean:

> a plan under which the creditor reasonably contemplates repeated transactions, which prescribes the terms of such transactions, and which provides for a finance charge which may be computed from time to time on the outstanding unpaid balance ….

*In re Roney*, 2012 WL 2888790, at *3-4.

---

[3] Though *Roney* addresses various consumer banking regulations that are inapplicable to the instant matter, the *Roney* court's discussion of these consumer banking regulations is helpful for the purpose of understanding the distinction between closed-end and open-end loan obligations. BB&T therefore cites to *Roney* for this limited purpose.

11. The *Roney* court then proceeded to note that for an open-end credit plan "Regulation Z adds a fourth criterion [for an open-end credit plan]—that of a reusable line of credit," which has been interpreted to mean as follows:

> Reusable line. The total amount of credit that may be extended during the existence of an open-end plan is unlimited because available credit is generally replenished as earlier advances are repaid. A line of credit is self-replenishing even though the plan itself has a fixed expiration date, as long as during the plan's existence the consumer may use the line, repay, and reuse the credit. The creditor may occasionally or routinely verify credit information such as the consumer's continued income and employment status or information for security purposes …. *This criterion of unlimited credit distinguishes open-end credit from a series of advances made pursuant to a closed-end credit loan commitment*.

*Id.* at *4 (quoting 12 C.F.R. Pt. 226, Supp. I, Subpart A (emphasis added by court)). This last sentence succinctly summarizes the difference between open-end and closed-end loans, whether being addressed in a consumer or a commercial setting.

12. Defendants' Response appears to eliminate any confusion as to Defendants' position, as Defendants state therein that "Defendants routinely sold lots, provided lot release fees and paid interest causing the balance of the Note and the amount available to draw to remain in a state of flux …. [Therefore,] Defendants allege that additional monies were available to draw on the Note which would not have required a renewal or a new loan[.]" Response, p. 3. It is clear that

Defendants are essentially asserting that they should have the benefit of an open-ended loan even though they agree with the undisputed fact that it is a closed-end loan, in that these allegations indicate that Defendants are saying that the principal balance available for draw under the Note rises and falls based upon Defendants' payments of the "lot release fees" and interest payments. That is the hallmark of an open-end loan.

13. Of course, Defendants are mistaken in taking this position, as the face of the Note clearly provides that it is a "CLOSED-END" loan, and a closed-end loan does not permit funds once-borrowed to be re-borrowed after they are repaid. BB&T would also point out that the Note itself[4] specifically provides that "[f]or value received … the undersigned Borrower promises to pay the principal amount, together with interest, and any other charges, including service charges, to the order of the Lender." *See* **Exhibit A** to Complaint, p. 1. The principal amount set forth on the face of the Note is "One Million One Hundred Seventy-Three Thousand One Hundred Fifty-Five And 12/100 Dollars," which it correctly restates numerically as "$1,173,155.12." Defendants' argument would require the Bank to loan more than the amount agreed upon. There is nothing in the Note which provides for an open-end loan, either in such terms or by means of any language to

---

[4] "When considering a motion to dismiss, all facts set forth in the [counterclaim plaintiff's counterclaim] are to be accepted as true, and the court limits its consideration to the pleadings and exhibits attached thereto." *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000). Defendants have already acknowledged the applicability of the Note in this matter.

the effect that BB&P may borrow and re-borrow proceeds so long as the outstanding principal amount at any given time does not exceed the face amount of the Note.[5]  Accordingly, the Note clearly provides for a closed-end loan for which BB&T and/or Colonial would not advance any amounts beyond the total principal amount of $1,173,155.12, regardless of any payments made on the Loan by the Defendants.

14. Defendants' misstatement of the mechanics of a closed-end loan forms the basis of Defendants' breach of contract counterclaim. Given the fact that a closed-end loan inherently does not permit the re-borrowing of funds, and it is undisputed in the pleadings themselves that this is a closed-end loan, the Amended Counterclaim does not "plausibly give rise to an entitlement to relief" as is required by *Iqbal* and *Twombly*.

15. Therefore, Defendants' counterclaim of breach of contract does not state a claim upon which relief may be granted, and is also due to be dismissed, with prejudice, as a matter of law pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

---

[5] If the Note evidenced an open-end loan, it would have enabled BB&P to borrow more than $1,173,155.12 under the Note, so long as the aggregate principal amount outstanding at any given time did not exceed $1,173,155.12. That is the antithesis of a "closed-end" loan, which is the kind of loan expressly provided for in the Note.  Also, see Ala. Code § 8-9-2(7) (1975), which requires that any agreement to modify the terms of an agreement to make a loan must be executed by the lender.

**WHEREFORE, PREMISES CONSIDERED,** BB&T respectfully moves this Court to grant BB&T's Motion to Dismiss Defendants' Amended Counterclaim as to each count therein, with prejudice, and to provide any other or further relief that it deems necessary.

Respectfully submitted this the 22nd day of May 2014.

                                                Respectfully submitted,

                                                /s/ Ryan D. Thompson
                                                Joe A. Joseph
                                                D. Charles Holtz
                                                Ryan D. Thompson

                                                *Attorneys for Defendants*

<u>**OF COUNSEL**</u>:
**BURR & FORMAN LLP**
420 20th Street North
Suite 3400
Birmingham, AL 35203
Phone:     (205) 251-3000
Facsimile:  (205) 458-5100
Email:      jjoseph@burr.com
              choltz@burr.com
              rthompso@burr.com

## CERTIFICATE OF SERVICE

  I hereby certify that on May 22, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send electronic notification of such filing to the following:

James E. Hill, Jr.
James E. Hill, III
HILL WEISSKOPF & HILL PC
P.O. Box 310
2603 Moody Parkway, Suite 200
Moody, Alabama 35004

Attorneys for Defendants

Jamie A. Wilson
BENTON & CENTENO LLP
2019 3rd Avenue North
Birmingham, Alabama 35203

Attorney for James F. Beall, Jr., Defendant

            */s/ Ryan D. Thompson*
            OF COUNSEL